THE STATE OF FLORIDA, *ex rel.*, JENNIE E. BAAS, RELATOR, *Plaintiff in Error*, v. J. F. McKINNON, AS SUPERINTENDENT OF PUBLIC INSTRUCTION OF ORANGE COUNTY, *Defendant in Error.*

Opinion Filed December 22, 1914.

The County Superintendent of Public Instruction may by mandamus be required to countersign a warrant duly ordered and issued by the County Board of Public Instruction, in a proper amount for the earned salary of a teacher, being a proper purpose, and there is no fraud or abuse of authority in the action of the board.

Writ of error to Circuit Court for Orange County; James W. Perkins, Judge.

Judgment reversed.

Justice Taylor took no part in this decision.

*Davis & Giles,* for Plaintiff in Error;

*Jones & Jones,* for Defendant in Error.

WHITFIELD, J.—The relator obtained an alternative writ of mandamus requiring the County Superintendent of Public Instruction to countersign a warrant issued by the County Board of Public Instruction to the relator for her salary as a teacher in the public schools of Orange County for the month of April, 1914, or to show cause for not doing so. At a hearing had on the alternative writ, the return and affidavits received as evidence, the writ was dismissed, and the relator took writ of error.

The alternative writ alleges that the relator was duly employed as a teacher by the County Board of Public Instruction; that she fully and faithfully performed her contract and duties as teacher, and * * * was actually engaged in her school duties from eight o'clock in the morning until one o'clock in the afternoon of each school day during the month of April, 1914; that the County Board of Public Instruction determined that there was due relator the sum of $65.00, and that a warrant should be drawn in favor of relator for $65.00, covering her salary for the school month of April, 1914, under the terms of her contract; that said warrant was thereupon duly drawn and signed by the Chairman of the Board of Public Instruction for and on behalf of said board; that the County Superintendent of Public Instruction failed and refused to countersign said warrant, as it was his duty to do, though requested so to do; that the treasurer of the county failed and refused to honor and pay said warrant because of the fact that it had not been counter-

signed by the respondent as secretary of the County Board of Public Instruction and County Superintendent. The writ commanded the respondent forthwith to countersign the warrant or to show cause for not doing so. A return was filed by the respondent, which among other matters not material here, averred that the County Board of Public Instruction in September, 1913, fixed and determined a school day to consist of five hours, exclusive of recesses; that the school rooms being insufficient to accommodate the attendance, a portion of the particular grade were taught from 8 A. M. to 12 M. and the other portion from 12 M. to 4 P. M.; that the grade taught by relator were not taught "as a grade" more than four hours a day for each portion of the grade as divided into morning and afternoon sections; that the law requires five hours of teaching a day; that though the teacher was required to remain till one o'clock when the class was dismissed at 12 M. and "that such was but an evasion and subterfuge, and not a compliance with the law that the pupils in attendance upon the public school should have for each school day, five hours exclusive of recesses;" that respondent protested to the Board against the curtailed hours of instruction as stated; that respondent "has declined under the discretion vested in him by the State and regulations of the Department of Education, which places in him special discretion in the disbursement of the public school funds" to see that the interests of the county are properly guarded, and its rights secured in the making and performance of every contract in construction of school buildings, or for other purposes, and that all moneys apportioned to or raised by the county, are applied to the objects for which they are granted or raised. Sec. 351, par. 9, Gen. Stats. The respondent further "avers that in passing upon the warrants granted by the Board, he had

no vote, but that in his vested powers as Superintendent, the discretion of disbursement was placed on him." It is also averred that the relator has adequate remedy in an action of assumpsit. Evidence in the form of affidavits was considered by the court.

An affidavit of the principal of the school states that the relator "actually taught for the full period of five hours each school day for and during the month of April aforesaid, that she has fully and faithfully discharged each and every duty and service incumbent upon her to perform as such teacher."

An affidavit of the relator states that "she actually taught and instructed pupils who were backward in their studies, from twelve until one; that the number of pupils so taught during this hour ranged from three to approximately twenty; that at no time during the month of April did she fail or refuse to perform such duties as were assigned her, and on no occasion did she give up these duties until after one o'clock." An affidavit of A. B. Johnson, one of the trustees of the school subdistrict, states in effect that the board was unable to furnish sufficient rooms for the pupils in attendance at the school and that to meet this emergency it was decided by the board, the trustees and the principal of the school to have a double session, one portion of a grade to be taught from eight to twelve and the other from twelve to four," but the teacher of the morning grade to remain for an hour after the grade had been dismissed, to coach such pupils in her section as were delinquent and needed additional instruction, and to assist as far as practicable, the teacher for the grade of the second division, and the teacher of the second division reported for duty at eleven in the morning for the same purpose, so that each and every teacher was actually engaged for five full hours in the discharge of her duties

as teacher." An affidavit of the respondent states, "That if said teachers, including Miss Baas, performed any other service between 12 M. and 5 P. M. such services were not contemplated to be performed during the 5 hours exclusive of recesses named in their and her contract, but were done in order to fill out the five hours in attendance on the schools, and not as a part of the 5 hours bargained to be given the grade as a whole."

"Deponent also asked the principal of the school if the arrangement by which the teachers of any division of grade 4 came to the school house one hour before the first division was dismissed and whereby the teacher of the morning division remained one hour after her division was dismissed on pretext of coaching delinquent pupils was not for the purpose of filling out the 5 hours required by the law and their contract. To this inquiry the said principal made an evasive answer, saying that he did it for the good of the school," "that he protested against the four hour double session plan as being illegal from the time the same was proposed in June, 1913, and on the opening day of school, in conference referred to by Johnson, affiant did protest and urged that rooms be obtained outside of school building and that rooms suitable for the purpose could by proper diligence be obtained. That as soon as affiant learned of the plan to call the afternoon teacher early by one hour and to keep the morning teacher an hour after dismissal of her grade he declared it to be an interruption of the school work and was a mere subterfuge to make out the five hours of school prescribed by statute."

In State *ex rel.* v. Graham, 67 Fla. 321, 65 South. Rep. 945, it was held that the County Treasurer would not by mandamus be required to pay a warrant drawn by the County Board of Public Instruction and signed

by the chairman of such board, when the warrant had not been countersigned by the County Superintendent of Public Instruction as is required by a regulation of the State School Department. The opinion in that case properly states that the County Superintendent "is by law ex-officio Secretary of the County Board of Public Instruction, with large powers and duties in the administration of the county school funds," and that the regulation requiring "that all warrants issued by the County School Board to be countersigned by the County Superintendent of Public Instruction as Secretary of such board, and as County Superintendent" is "a salutary regulation having the force of law within its proper sphere of operation."

But this does not indicate a view of the law that a County Superintendent of Public Instruction may not by mandamus be required to countersign a warrant duly ordered and issued by the County Board of Public Instruction for a proper disbursement, there being no fraud, illegality or abuse of authority in the action of the board.

The Constitution provides that the County School Fund "shall be disbursed by the County Board of Public Instruction solely for the maintenance and support of public free schools." Sec. 9, Art. XII.

Section 6 of Article VIII authorizes the election in each county of a Superintendent of Public Instruction and provides that "their powers, duties and compensation shall be prescribed by law." The statute provides for the election of a County Board of Public Instruction and authorizes the board "to employ teachers for every school in the county, and to contract with and pay the same for their services," and "to audit and pay all accounts due by the Board of Public Instruction," and "to perform all acts reasonable and necessary for the promotion of the

educational interests of the county." Sec. 347 Gen. Stats. 1906.

The County Superintendent of Public Instruction is by statute made the Secretary of the County Board, and is authorized "to see that the interest of the county are properly guarded and its rights secured in the making and performance of every contract for, the construction of school buildings, or for other purposes; and that·all moneys apportioned to or raised by the county are applied to the objects for which they were granted or raised." See Secs. 345 and 351.

The County Superintendent has no vote in the disbursements of funds and consequently has no primary or ultimate responsibility for such disbursements. It is his ministerial duty to countersign all warrants duly ordered and issued by the County Board of Public Instruction when there is no fraud or abuse of authority or other illegal action in issuing such warrants. This being a ministerial duty involving no discretion, it may be enforced by mandamus.

In this case it clearly appears that the warrants was legally issued by the County Board for a proper purpose, that the salary had been earned and was due and that the refusal of the respondent to countersign the warrant is not justified. The judgment of the County Superintendent by remaining at the school for an hour after her grade is dismissed, engaged in coaching such pupils in her grade as are delinquent and needed additional instruction, or in other school duties assigned, to her, the teacher is not performing the five hours of services contemplated by her contract, does not affect the validity or the propriety of the judgment and action of the County Board, there being no fraud or abuse of authority in the action of the board. Nothing in the respondent's return or evidence

or in the transcript shows any lack or abuse of authority by the issuance of the warrant by the board or shows any valid reason why the respondent should not be required to countersign the warrant in the discharge of a plain legal duty involving no discretion.

The judgment dismissing the alternative writ of mandamus is reversed, and the cause is remanded with directions to issue the peremptory writ.

SHACKLEFORD, C. J., AND COCKRELL AND HOCKER, J. J., concur.

TAYLOR, J., takes no part.